BENJAMIN L. HOLLAND *et al.*, administrators, plaintiffs in error, *vs.* JOHN G. TYUS *et al.*, defendants in error.

Where, during the late war, a creditor requested his debtor, whose note he held, to send Confederate money to Flanders, or some other good house in Macon, to pay the note, and the debtor replied he would send it to Fears, at Macon, and about a month thereafter, sent it to Fears, writing to the creditor that he had sent it, but this letter did not reach the creditor, and the latter had no knowledge that the money had been sent, until after the war, when it had become worthless, the transaction was not a payment; and these facts would not bar a recovery on the note. The debtor having waited a month after giving notice that he would send the money to Fears, was bound, when he did send it, to see that information thereof reached the creditor.

Debtor and creditor. Payment. Before Judge WRIGHT. Mitchell Superior Court. May Term, 1875.

Reported in the opinion.

VASON & DAVIS, for plaintiffs in error.

STROZER & SMITH, for defendants.

BLECKLEY, Judge.

This was complaint on a promissory note, dated January 1st, 1861, and due twelve months thereafter. The suit was brought in 1866. There is no plea in the record, but the defense sought to be established by the defendants was pay-

Holland *et al. vs.* Tyus *et al.*

ment. They were sworn in their own behalf. One of them (Tyus) testified that in 1863 the plaintiff told him to send Confederate money in payment of the note, by express, to one Flanders at Macon, and afterwards wrote to him to send it to Flanders or some other good house in Macon; that he wrote to plaintiff he would send it to Fears; and that about one month thereafter he gave the money to his co-defendant to be sent to Fears at Macon, after which he wrote to plaintiff that he had sent it; that whether the plaintiff ever received the money or the notice that it was sent, he did not know; neither did he know whether the money ever reached Fears, or, of his own knowledge, whether it was sent forward by his co-defendant or not. The latter testified that he did send it to Fears at Macon, by express, in December, 1863, and that Fears told him he had received it. Whether it, or notice that it was sent, ever reached plaintiff, he did not know. When the witness went into bankruptcy, he returned this note as one of the debts he owed.

The plaintiff testified that the note was given for the price of a slave, and was intended by the parties to be paid in good money; that he wrote to Tyus several times for the money to be sent to him; Tyus wrote requesting an interview in Macon, and afterwards wrote that he would send the money to Macon to Fears; but if he ever sent it, witness never knew it nor received any notice of it; no money was ever offered him; if it had been he would have accepted it, though he did not recollect any particular agreement to receive Confederate money. If such money had been sent to Macon and he had known it he would have gone after it.

No correspondence between the parties was produced. The letter of plaintiff, referred to in the testimony of Tyus, was lost. The other letters mentioned are unaccounted for, but no objection was taken to the recital of their contents. The jury having found for defendants, a motion was made for a new trial, which motion was overruled.

Taking the evidence in the most favorable light for the defendants we do not think a payment was established. Tyus

Holland *et al. vs.* Tyus *et al.*

wrote that he would send the money to Fears, and the plaintiff received that letter; but it does not appear that the plaintiff was advised *when* the money would be sent. Was he to look out for it during a week, or a month, or for what length of time? Why did Tyus wait about a month before taking any measures to send it? If he had sent it promptly the prior notice to the plaintiff might have sufficed; but as he delayed for a month he was bound to give fresh notice, and to see, at his peril, that the notice reached the plaintiff. He testifies that he wrote to the plaintiff that the money had been sent, but does not say to what point the letter was addressed, or by what conveyance it was sent. Indeed he does not say that it was sent at all, except as a sending of some sort may be implied in the expression that he wrote. But if he sent it, it never reached the plaintiff, and the plaintiff did not receive notice otherwise, and never got the money. Then the note remained in the plaintiff's hands, and, so far as appears, was never called for. It was returned after the war by one of the defendants, in a schedule of his outstanding debts, and the defendant that so returned it is the one by whose testimony the actual sending of the money to Fears is established. To treat so grave a matter as payment of a just debt as arising out of the loose, vague and careless transaction detailed in the testimony, would be to deny that security to the rights of a creditor which it is the province of law to afford and of courts to enforce. It may be that if all the correspondence between the parties was produced, or the contents minutely proved, the case would present a different aspect; but acting only on what is before us, we must pronounce the verdict unwarranted by the evidence, and order a new trial.

Judgment reversed.